IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRIS MERCAVITCH            :
                                 : CIVIL NO.  3: 16-CV-0032
        Plaintiff,          :
                                 :
vs.                           : (JUDGE MARIANI)
                                 :
BOROUGH OF WYOMING and   :
ROBERT J. BOYER,        :
                                 :
        Defendants:        : (ELECTRONICALLY FILED)

**DEFENDANTS BOROUGH OF WYOMING AND
ROBERT J. BOYER'S BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i-ii

TABLE OF CITATIONS .............................................................. iii-v

I.      PROCEDURAL HISTORY ................................................. 1

II.     STATEMENT OF FACTS .................................................. 1

II.     STATEMENT OF THE QUESTION PRESENTED ......... 4

       WHETHER BOYER AND WYOMING
       BOROUGH ARE ENTITLED TO SUMMARY
       JUDGMENT ON MERCAVITCH'S CLAIMS OF
       FIRST AMENDMENT RETALIATION, FOUR-
       TEENTH AMENDMENT DUE PROCESS AND
       VIOLATIONS OF PENNSYLVANIA WAGE AND
       HOUR LAWS? ............................................................ 4

IV.     LAW AND ARGUMENT .................................................... 5

       BOYER AND WYOMING BOROUGH ARE
       ENTITLED TO SUMMARY JUDGMENT ON
       MERCAVITCH'S CLAIMS OF FIRST AMEND-
       MENT RETALIATION, FOURTEENTH AMEND-
       MENT DUE PROCESS AND VIOLATIONS OF
       PENNSYLVANIA WAGE AND HOUR LAWS...... 5

       THE LEGAL STANDARD..................................................... 5

       A.      MERCAVITCH'S FIRST AMENDMENT
              RETALIATION CLAIM FAILS AS A
              MATTER OF LAW........................................................ 6

Legal Authority - First Amendment Retaliation .........   7

B.   MERCAVTICH'S FOURTEENTH AMENDMENT
     DUE PROCESS CLAIM FAILS AS A MATTER
     OF LAW .......................................................................   12

C.   DEFENDANTS ARE ENTITLED TO SUMMARY
     JUDGMENT ON MERCAVITCH'S CLAIMS
     UNDER PENNSYLVANIA WAGE AND HOUR
     LAWS ........................................................................   17

V.   CONCLUSION .......................................................................   21

# TABLE OF CITATIONS

## CASES

Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) ........................... 14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct.
2505, 91 L.Ed.2d 202 (1986) .............................................. 5

Azzaro v. Cnty. of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997) ..... 8

Baldassare v. New Jersey, 250 F.3d 188, 194-95 (3d Cir. 2001)....... 9

Beyer v. Borough, 428 F. App'x 149, 155 (3d Cir. 2011)................ 11

Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358,
1363 (3dCir. 1992), *cert. denied* 507 U.S. 912, 113 S.Ct. 1262,
122 L.Ed.2d 659 (1993)...................................................... 6

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548,
91 L.Ed.2d 265 (1986) ....................................................... 5

Channel Home Ctrs. v. Grossman, 795 F.2d at 298-99 ..................... 20

Cleveland Bd. of Educ. V. Loudermill, 470 U.S. 532, 545,
105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ............................................ 3,15,16,17

Conklin v. Warrington Twp., 2007 WL 4248214 at *3
(M.D. Pa 2007) *aff'd sub nom*, 304 F. App'x 115 (3d Cir. 2008) .... 9, 11

Connick v. Meyers, 461 U.S. 138, 147, 103 S.Ct. 1684,
75 L.Ed.2d 708 (1983) ....................................................... 7

Curinga v. City of Clairton, 357 F.3d 305, 309 (3d Cir. 2004) ......... 7

Czurlanis v. Albanese, 721 F.2d 98, 103 (3d Cir. 1983) .................. 8

Emigh v. Steffee, Civil Action No. 08-1726, 2009 WL
1472916 at *10 (W.D. Pa. May 27, 2009), *aff'd*, 442 Fed.
Appx. 660 (3d Cir. 2011) .................................................................. 14

Gniotek v. City of Phila., 808 F.2d 241, 244 (3d Cir. 1986) .............. 15

Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970) .... 19

Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997) ......... 7

Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) .. 14

Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)......... 7

Johnson v. Lincoln Univ., 776 F.2d 443, 454 (3d Cir. 1985) ............. 8

Lauren W. *ex rel*. Jean W. V. DeFlaminis, 480 F.3d, 267
(3d Cir. 2007) ........................................................................... 11

Lombardo v. Gasparini Excavating Co., 385 Pa. 388, 393,
123 A.2d 663 (Pa. 1956) ........................................................... 20

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177,
111 L.Ed.2d 695 (1990).............................................................. 6

Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) ........... 11

Mazzella v. Koken 559 Pa. 216, 739 A.2d 531, 535 (Pa. 1999) .......... 19

McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995) ........................ 5

Miller v. Clay Twp., 124 Pa. Cmwlth. 252, 555 A.2d 972, 974
(Pa. Cmlwth. 1989).................................................................... 19

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed2d 471 (1977) ............................................ 8

Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008).. 19

Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 79 (3d Cir. 1982).......... 19

Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ....................................................................... 8

Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996)........................... 7

Pugh v. Super Fresh Food Markets, Inc., 640 F.Supp. 1306, 1307 (E.D.Pa. 1986) ............................................................................ 19

Swineford v. Snyder County Pa., 15 F.3d 1258, 1270 (3d Cir. 1994) ...................................................................................... 8

Tiernan v. Devoe, 923 F.2d 1024, 1032 (3d Cir. 1991) ....................... 20

Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990)....................................................................................... 5

Watters v. City of Philadelphia 55 F.3d 886, 891 (3d Cir. 1995)......... 7, 8

Wilcher v. City of Wilmington, 139 F.3d 366, 372 (3d Cir. 1988) ..... 18

Zamboni v. Stamler, 847 F.2d 73, 79 n. 6, 80 (3d Cir. 1988) .............. 8

**STATUTES**

Fed.R.Civ.P. 56(a)................................................................................. 5

Fed.R.Civ.P. 56(c) ............................................................................ 5, 20

Restatement (Second) of Contracts §17 (1981) .................................. 19, 20

I.   **PROCEDURAL HISTORY**

On January 8, 2016, Plaintiff Christopher Mercavitch (hereinafter, "Mercavitch") instituted a law suit pursuant to 42 U.S.C. §1983 against Defendants Borough of Wyoming and Mayor Robert J. Boyer (hereinafter, "Boyer"), alleging that his civil rights were violated.  The Complaint was subsequently amended on March 29, 2016.  On April 13, 2016, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Amended Complaint.

On March 22, 2016, a Case Management Order was issued establishing deadlines in this case.  This Order was subsequently amended on July 27, 2016 and again on August 31, 2016.  The most recent order established a December 15, 2016 deadline for the submission of a dispositive motion. On December 15, 2016, Defendants filed their dispositive motion, statement of undisputed material facts and exhibits.  This brief is filed in support thereof.

II.   **STATEMENT OF FACTS**

The instant action is a companion case to the case of <u>Fuller v. Borough of Wyoming, et al.</u>, 3:15-cv-2197.  The Defendants Boyer and Wyoming Borough are alleged to have retaliated against Mercavitch because he reported wrongdoing by

Boyer's girlfriend Tamra Smith (SUMF at ¶6).[1] Mercavitch asserts he was

subjected to an unwarranted demotion and a fifteen day suspension in retaliation

for his public speech.  Mercavitch further asserts that he has also been retaliated

against because of his decision to file the instant lawsuit (Doc. 12 at ¶s 57-58).

Mercavitch's third claim is that he was not afforded a meaningful pre-termination

hearing prior to the institution of discipline against him (Doc. 12 at ¶s 32-38).

Finally, Mercavitch alleges violations of several Pennsylvania wage and hour laws

for periods dating between the years 2009-2014 (Doc. 12 at ¶s 46-53).

Application of the Defendants' SUMF, each of which is fully supported by

the record, establishes the speciousness of Mercavitch's claims.

First of all, the record demonstrates that when Mercavitch was notified on

December 4, 2015, that he was being subjected to the disciplinary process under

the collective bargaining agreement for his failure to respond to a 911 call on

November 20, 2015, there is no evidence that Boyer was aware that Mercavitch

had contacted Trooper Schutter about the involvement of Tamra Smith in the truck

purchase by Charles Story (SUMF at ¶20).  The Mercavitch Complaint is a mirror

image of the <u>Fuller</u> Complaint in that Mercavitch, through his counsel, baldly

---

[1] Wyoming Borough and Boyer have filed their Statement of Undisputed Material Facts simultaneously with this brief.  References to that Statement are identified as ("SUMF at ¶ __").

2

asserts notice on the part of Boyer to a confidential communication without a shred of evidentiary support.

The second instance of alleged retaliation was supposedly precipitated by Mercavitch's decision to institute this litigation. However, Mercavitch's own pleading - the Amended Complaint, establishes that the only scant bit of retaliatory activity was two fold.  First a few week delay in payments to him under the Heart and Lung Act (Doc. 12. at ¶72).[2] The time frame alleged hardly forms the basis for this claim that would support a constitutional injury.  The second basis of post filing retaliation magnifies the speciousness of Mercavitch's claim. It is the mind numbingly inscrutable assertion that it was retaliatory to move Mercavitch's status as custodial officer[3] at a time when he was not physically capable of performing the job because of a work injury and receiving full Heart and Lung benefits.  Neither claim for retaliation can survive in the face of these undisputed facts.

The other claims are equally meritless.  The due process claim fails because Mercavitch was provided with both an adequate Loudermill notice (Exhibit "B")

---

[2]  "72.  Plaintiff received the checks for 2/19/2016 and 3/4/16, on 3/7/2016.  Clearly, the delay in pay is intentional and done in direct retaliation for having reported Ms. Smith's wrongdoing and filed this lawsuit."

[3]  Doc. 12 at ¶ 74.

and a full opportunity to present his case at his December 10, 2015 hearing.  The

fact that Mercavitch came to the hearing with a fully prepared statement

addressing the substance of the charge against him is the best evidence that the

notice he received sufficiently apprised him of the charges (SUMF at ¶s 12, 22, 24

and 26).

Finally, the wages claims under state law were resolved by Mercavitch

through his bargaining agent and the Borough on November 6, 2014 (Exhibit "F").

That agreement is binding on Mercavitch and enforceable as a final resolution of

those claims (SUMF at ¶s 32-34; Exhibit "F"; Exhibit "A" at pp. 58, 68-69).

These are the operative and material facts which control determination of

the Defendants' motion.

II.     **STATEMENT OF THE QUESTION PRESENTED**

>        **WHETHER BOYER AND WYOMING BOROUGH
>        ARE ENTITLED TO SUMMARY JUDGMENT ON
>        MERCAVITCH'S CLAIMS OF FIRST AMENDMENT
>        RETALIATION, FOURTEENTH AMENDMENT DUE
>        PROCESS AND VIOLATIONS OF PENNSYLVANIA
>        WAGE AND HOUR LAWS?**

>        (Suggested Answer: In the Affirmative)

IV. **LAW AND ARGUMENT**

> **BOYER AND WYOMING BOROUGH ARE ENTITLED TO SUMMARY JUDGMENT ON MERCAVITCH'S CLAIMS OF FIRST AMENDMENT RETALIATION, FOURTEENTH AMENDMENT DUE PROCESS AND VIOLATIONS OF PENNSYLVANIA WAGE AND HOUR LAWS.**

**THE LEGAL STANDARD**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." Fed.R.Civ.P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has

been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). "Inferences should be drawn in the light most favorable to movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3dCir. 1992), *cert. denied* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

## A.   MERCAVITCH'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW.

Mercavitch was notified on December 4, 2015, that the Borough was convening a Loudermill hearing to address his alleged decision to ignore a 911 call, a charge that he did then and continues to dispute.  He alleges that this disciplinary action was precipitated by Defendant Boyer's knowledge that he had reported Boyer's girlfriend for bid fixing, precisely the same claim upon which his co-worker, Michael Fuller, relies.  Unfortunately for Mercavitch, he has proffered on this record not a single fact that would support his allegation that Boyer knew that he had contacted the PSP prior to December 4, 2015 (the date of the Loudermill letter), December 10, 2015 (the date of the Loudermill hearing) or January 5, 2016 (the date of the letter notifying Mercavitch of the Borough's

decision related to his discipline).  Boyer testified under oath that he learned that

Mercavitch contacted the PSP when he read Mercavitch's lawsuit[4] filed on

January 8, 2016 (Doc. 1).  Based upon this unrefuted chronology, the retaliation

claim fails as a matter of law.

**Legal Authority - First Amendment Retaliation**

"Public employees have a First Amendment right to speak freely on matters

of public concern."  Curinga v. City of Clairton, 357 F.3d 305, 309 (3d Cir. 2004).

As the Third Circuit noted in Watters v. City of Philadelphia, "Judicial vigilance is

required to ensure that public employers do not use their authority to silence

discourse on matters of public concern simply because they disagree with the

content of the employee's speech."  55 F.3d 886, 891 (3d Cir. 1995).

> A public employee's retaliation claim for engaging in
> protected activity must be evaluated under a three-step
> process.  Green v. Phila. Hous. Auth., 105 F.3d 882, 885
> (3d Cir. 1997); Pro v. Donatucci, 81 F.3d 1283, 1288 (3d
> Cir. 1996).  First, plaintiff must establish the activity in
> question was protected.  Holder v. City of Allentown,
> 987 F.2d 188, 194 (3d Cir. 1993).  For this purpose, the
> speech must involve a matter of public concern.
> Connick [v. Meyers], 461 U.S. [138], 147, 103 S.Ct.
> [1684, 75 L.Ed.2d 708 (1983)]; Watters, 55 F.3d at 892.
> Once this threshold is met, plaintiff must demonstrate his
> interest in the speech outweighs the state's
> countervailing interest as an employer in promoting the

---

[4] Exhibit "G" at p. 37.

efficiency of the public services it provides through its employees. Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (requiring courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"); Azzaro [v. Cnty. of Allegheny], [110 F.3d 968, 976 (3d Cir. 1997)]; Green, 105 F.3d at 885. These determinations are questions of law for the court. Waters, 511 U.S. at 668, 114 S.Ct. 1878, 128 L.Ed.2d 686; Green, 105 F.3d at 885.

If these criteria are established, plaintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed2d 471 (1977); Watters, 55 F.3d at 892; Swineford v. Snyder County Pa., 15 F.3d 1258, 1270 (3d Cir. 1994). Lastly, the public employer can rebut the claim by demonstrating "it would have reached the same decision ... even in the absence of the protected conduct." Doyle, 429 U.S. at 287, 97 S.Ct. 568, 50 L.Ed.2d 471; Swineford, 15 F.3d at 1270 (citing Czurlanis v. Albanese, 721 F.2d 98, 103 (3d Cir. 1983)). The second and third stages of this analysis present questions for the fact finder and are not subject to review in this case. Green, 105 F.3d at 889 (recognizing second and third steps in *Pickering/Mt. Healthy* analysis are questions for fact finder); *see also* Watters, 55 F.3d at 892 n. 3; Zamboni v. Stamler, 847 F.2d 73, 79 n. 6, 80 (3d Cir. [1988]) (noting whether protected activity acted as substantial or motivating factor in discharge and whether same action would have been taken regardless are questions for jury), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988); Johnson v. Lincoln

8

> Univ., 776 F.2d 443, 454 (3d Cir. 1985) (holding
> "second and third questions ... should be submitted to the
> jury").

<u>Baldassare v. New Jersey</u>, 250 F.3d 188, 194-95 (3d Cir. 2001).

In the present case, and for purposes of this motion only, Defendants concede that Mercavitch's testimony that he reported what he learned from Fuller about Story's purchase of the dump truck would qualify as speech subject to First Amendment protection.  Having moved past Mercavitch's initial hurdle, the critical questions which remain as to whether he can successfully defeat summary judgment are the following:

1)   Whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, <u>McKee v. Hurt</u>, 436 F.3d 165, 170 (3d Cir. 2006); and

2)   Whether Mercavitch can demonstrate that retaliation played a substantial role in motivating Boyer and the Borough's treatment of him in issuing discipline for the events of November 20, 2015.[5]

With respect to the first question as to whether the retaliatory conduct alleged is sufficient to deter a person of ordinary firmness from exercising constitutional rights, Defendants maintain that a single incident of discipline does not satisfy Mercavitch's burden.  The record establishes that while he did receive a

---

[5]  "To establish the causation element of a retaliation claim, a plaintiff must prove that the exercise of his First Amendment rights played some substantial role in motivating the adverse action."  <u>Conklin v. Warrington Twp.</u>, 2007 WL 4248214, at *3 (M.D. Pa. 2007).

fifteen day unpaid suspension and change in rank from Captain to Patrolman, he was not subjected to a single monetary penalty other than the fifteen day suspension.[6]

Moreover, Mercavitch has not returned to work since an injury which he apparently sustained in the same time period - the beginning of December 2015. As such, the only alleged instances of retaliation, other than the wage and hour claims and being defrocked as custodial officer which are addressed below, clearly fail to constitute the severity or frequency of the kind of harassment that would deter a person of ordinary firmness from exercising constitutional rights.

Finally, and most critically, the undisputed time frame in this case establishes that Mercavitch cannot demonstrate that retaliation played a substantial role in motivating the Defendants' treatment of him. As explained above, Mercavitch can proffer no evidence that Boyer was aware that Mercavitch contacted the PSP before he was served with the December 4, 2015 Loudermill notice (SUMF at ¶s 19, 20). Because the initiation of this disciplinary process predated Boyer's knowledge of Mercavitch's First Amendment Activities, his proof falls short on causation as a matter of law.

---

[6] SUMF at ¶s 28-30.

To establish the causation element of a retaliation claim, a plaintiff must prove that the exercise of his First Amendment rights played some substantial role in motivating the adverse action." Conklin v. Warrington Twp., 2007 WL 4248214 at *3 (M.D. Pa 2007) (internal quotations marks omitted) *aff'd sub nom*. Conklin v. Warrington Twp., 304 F. App'x 115 (3d Cir. 2008). To make this showing, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. *ex rel*. Jean W. V. DeFlaminis, 480 F.3d, 267 (3d Cir. 2007). "In certain narrow circumstances, an unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection." Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (internal quotation marks and citations omitted); *see also* Beyer v. Borough, 428 F. App'x 149, 155 (3d Cir. 2011) (quoting *Marra* in a First Amendment retaliation case). "Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee[.]" *Marra*, 497 F.3d at 302.

11

Mercavitch has taken an admittedly creative but nevertheless unavailing approach in an effort to make himself impervious to employer discipline.  He has inverted the cause and effect components that make up the elements of his claim. The sequence of events is undisputed:

- December 4, 2015, Mercavitch is notified of his Loudermill hearing for failing to respond to a 911 call (SUMF at ¶5);

- December 10, 2015, Loudermill hearing takes place (SUMF at ¶5);

- January 5, 2016 Mercavitch notified of his suspension and change in rank (SUMF at ¶13);

- January 8, 2016 Boyer's first notice of Mercavitch's protected speech (Exhibit "G" at p. 37).

Consider the chaos that would ensue if public employees were able to derail the legitimate objective of their employees conducting employment reviews and meting out discipline by the employee claiming a statement of public concern insulates them from abiding by legitimate work place governance.  First Amendment protection was never meant to extend to this type of scenario.

As such, Boyer and the Borough are entitled to summary judgment on both retaliation Counts of Mercavitch's AC.

## B.  MERCAVITCH'S FOURTEENTH AMENDMENT DUE PROCESS CLAIM FAILS AS A MATTER OF LAW.

Mercavitch's contention that he was not afforded adequate pre-hearing

12

notification and a meaningful opportunity to be heard boards on the

incomprehensible in the face of the record which has been developed.

It is undisputed that on December 4, 2015, Mercavitch was notified that a

Loudermill Hearing had been convened for purposes of evaluating circumstances

which had occurred on November 20, 2015, when Mercavitch allegedly failed to

respond to 911 dispatch center calls and complete police reports (Exhibit "B").

On December 10, 2015, Mercavitch's Loudermill hearing was conducted at

which time Mercavitch was represented by counsel (Exhibit "C").

At the time of the hearing, the following colloquy took place between

attorney Richard Goldberg, on behalf of Wyoming Borough, and Mr. Mercavitch

and his counsel attorney Anthony M. Caputo:

> The Borough has reason to believe that on November 20,
> 2015, and potentially several other occasions, you failed
> to respond to 911 dispatch center calls and complete
> police reports.  If the Borough's information is accurate,
> your conduct constituted neglect of official duty,
> inefficiency, conduct unbecoming an officer, and a
> violation of the standard of conduct which the Borough
> may reasonably expect of you.  This is a serious matter.
> This may result in your discipline.  You will be given a
> full opportunity to give your side of the story and to
> clarify any inaccuracy.  You may bring a representative
> of your union with you, if you wish.

(Exhibit "C" at pgs. 3, 4).

It is undisputed that Mercavitch was fully aware of the charge that had been leveled against him because he came to the hearing with a prepared statement in which he explained his version of the events in question (Exhibit "D").

The Fourteenth Amendment to the U.S. Constitution provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, §1. To successfully state a procedural due process violation, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)); see Emigh v. Steffee, Civil Action No. 08-1726, 2009 WL 1472916 at *10 (W.D. Pa. May 27, 2009), aff'd, 442 Fed. Appx. 660 (3d Cir. 2011). Here, Plaintiff alleges that he had a constitutionally protected property interest in his continued employment. (FAC ¶164). Defendants do not dispute this allegation, so the question becomes whether Plaintiff was deprived of that interest without "due process of law".

Our Court of Appeals has held that, where a plaintiff has a property interest in employment, due process generally requires a pre-deprivation hearing. Schmidt

14

v. Creedon, 639 F.3d 587, 595-97 (3d Cir. 2011).  In *Schmidt*, that Court explained

that:

> [o]rdinarily, a pre-deprivation hearing "need not be
> elaborate." [Cleveland Bd. of Educ. V. Loudermill, 470
> U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)].
> Where adequate post-deprivation procedures are
> available, an employee is entitled only to "notice of the
> charges against him, an explanation of the employer's
> evidence, and an opportunity to present his side of the
> story." *Id*.  The hearing can be informal and "need not
> definitively resolve the propriety" of the deprivation.  *Id*.
> "It should be an initial check against mistaken decisions
> – essentially, a determination of whether there are
> reasonable grounds to believe that the charges against
> the employee are true and support the proposed action."
> *Id*.  An employee is generally not entitled to notice of the
> reasons for his discharge in advance of a pre-deprivation
> hearing, Gniotek v. City of Phila., 808 F.2d 241, 244 (3d
> Cir. 1986)], or to present his case to an impartial
> decision-maker at such a hearing, McDaniels v. Flick, 59
> F.3d 446, 460 (3d Cir. 1995).

*Schmidt*, 639 F.3d at 596-97.

Mercavitch cannot dispute that he received a notice of the charge

specifically delineating the issue related to his failure to respond to a call on

November 20, 2015.  While the notice references other instances without

identifying dates, Mercavitch was provided with that information at his pre-

15

suspension hearing.[7] He was not issued his suspension until January 5, 2016

(Exhibit "E").  Accordingly, Mercavitch had nearly a month to provide the

Borough with a reply to the particular dates identified at the hearing and chose not

to do so.

Based on this collective evidence, the Borough's pre-disciplinary process

gave Mercavitch constitutionally adequate notice of his alleged misconduct and an

opportunity to present his side of the story.  *See* Schmidt, 639 F.3d at 596 (quoting

*Loudermill*, 470 U.S. at 545, 105 S.Ct. 1487).  Consistent with the teachings of

*Loudermill* and *Schmidt*, the pre-termination proceedings served as an adequate

"check" against erroneous decision-making and allowed the Borough to ensure

there were reasonable grounds to believe that Mercavitch had violated the

---

[7] The following colloquy establishes the notice afforded to Mercavitch at the hearing:

> ATTY.  GOLDBERG:  I'm going to give you six other dates.  These are not failure to respond to 911 calls but rather failure to document calls.  And I'm just going to give you the dates.

> They are August 26th, 2015, September 4th, 2015, September 8th, 2015, November 2nd, 2015, November 4th, 2015, November 11th, 2015.

> ATTY.  CAPUTO: Okay.  Can we just back up?  These are failure to document? What was that?

> ATTY.  GOLDBERG: Failure to document calls.

(Exhibit "C" at p. 8).

Department's standard of conduct. *See id.* at 596-97 (quoting *Loudermill*, 470 U.S. at 545, 105 S.Ct. 1487).

Consequently, as a matter of law, Mercavitch had constitutionally adequate pre-deprivation process relative to the charges leveled against him.

### C.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON MERCAVITCH'S CLAIMS UNDER PENNSYLVANIA WAGE AND HOUR LAWS.

It is undisputed that a memorandum of understanding between the Borough of Wyoming and the Fraternal Order of Police, Wyoming Valley Lodge # 36, the exclusive recognized bargaining agent for the unit of which Mercavitch is a member entered into an agreement in which Mercavitch agreed to withdraw his grievance seeking payment of accumulated compensatory time which is the subject of Count III of his Amended Complaint (Exhibit "F").

Mercavitch acknowledged during his sworn testimony that he agreed to enter in to the settlement agreement addressing his accumulated compensatory time in which he withdrew his grievance on that point (Exhibit "A" at p. 58; Exhibit "F").

It is undisputed that Mercavitch admitted that all of the issues of compensation set forth in paragraphs 41 through 55 of the Amended Complaint are for the same allegations of lost payments which he withdrew incident to the

17

memorandum of understanding identified in the Record as Exhibit "F" (Exhibit "A"t at pgs. 68, 69).

The issue to be decided is whether Mercavitch should be permitted to disavow the enforceable agreement into which he entered more than a year prior to the filing of this lawsuit (the Memorandum of Understanding was executed on November 6, 2014; Exhibit "F"). Settled law dictates the dismissal of this claim.[8]

The courts encourage attempts to settle disagreements outside of the context of litigation.  <u>Wilcher v. City of Wilmington</u>, 139 F.3d 366, 372 (3d Cir. 1988). "A

---

[8]  Defendants raised the MOU as an affirmative defense in their Amended Answer pursuant to F.R.C.P. 8(c)(1).  The MOU (Exhibit "F") provides in pertinent part:

> NOW, THEREFORE, the parties agree resolve the dispute as follows:
>
> 1.  An authorized representative of Borough shall sign a letter explaining, to the best of their knowledge, Mercavitch has met the requirements for an Act 235 waiver;
>
> 2.  Mercavitch shall withdraw his grievance seeking payment of accumulated compensatory time;
> 3.  Mercavitch shall receive a five day suspension without pay which shall be served in single days over five consecutive pay periods;
>
> 4.  Any violations of the Borough's internet and/or computer policy will result in further discipline, up to and including termination; and
>
> 5.  The terms of this MOU shall be incorporated into the parties' collective bargaining agreement.

settlement agreement is a contract and is interpreted according to local law." *Id*.
(citing <u>Pennwalt Corp. v. Plough, Inc.</u>, 676 F.2d 77, 79 (3d Cir. 1982)).  It is the
law in the Third Circuit that "an agreement to settle a lawsuit, voluntarily entered
into is binding upon the parties, whether or not made in the presence of the Court,
and even in the absence of a writing."  <u>Pugh v. Super Fresh Food Markets, Inc.</u>,
640 F.Supp. 1306, 1307 (E.D.Pa. 1986) (citing <u>Green v. John H. Lewis & Co.</u>, 436
F.2d 389, 390 (3d Cir. 1970)).

   An enforceable settlement agreement must possess all of the elements of a
valid contract. <u>Mazzella v. Koken</u> 559 Pa. 216, 739 A.2d 531, 535 (Pa. 1999)
(citations omitted).  The court will enforce a settlement agreement if all of the
material terms of the bargain are agreed upon.  *Id*. at 537, citing <u>Miller v. Clay
Twp.</u>, 124 Pa. Cmwlth. 252, 555 A.2d 972, 974 (Pa. Cmwlth. 1989).  However, the
court will set aside the agreement if there are "ambiguities and undetermined
matters which render a settlement agreement impossible to understand and
enforce." *Id.*, citing *Miller*, 555 A.2d at 974.  An enforceable agreement also
requires mutual assent.  <u>Morales v. Sun Constructors, Inc.</u>, 541 F.3d 218, 221 (3d
Cir. 2008), citing Restatement (Second) of Contracts §17 (1981) (the
Restatement).  "Acceptance is measured not by the parties' subjective intent, but
rather by their outward expressions of assent." *Id*.  The Restatement observes that:

> The parties to most contracts give actual as well as
> apparent assent, but it is clear that a mental reservation
> of a party to a bargain does not impair the obligation he
> purports to undertake.  The phrase used here, therefore is
> "manifestation of mutual assent."

Restatement §17.

In order to prevail on a motion to enforce settlement, the moving party must satisfy the court that there are no disputed issues of material fact as to the validity of the settlement agreement. Tiernan v. Devoe, 923 F.2d 1024, 1032 (3d Cir. 1991), citing Fed.R.Civ.P. 56(c).  The court must determine whether the nature and extent of the parties obligations are certain, and whether the parties agreed upon the material and necessary details of the bargain.  *See* Am. Eagle Outfitters, 584 F.3d at 585, *citing* Lombardo v. Gasparini Excavating Co., 385 Pa. 388, 393, 123 A.2d 663 (Pa. 1956).  The Court must also determine whether "the terms are sufficiently definite to be specifically enforced."  *Id*., citing Channel Home Ctrs. v. Grossman, 795 F.2d at 298-99. Whether the terms are sufficiently definite is a question of law. *Id*., citing *Channel Home Ctrs.*, 795 F.2d at 300.

In the instant situation, Mercavitch was represented by his bargaining unit and an agreement was entered into at arm's length to resolve the disputed wage issues.  The terms were sufficiently clear and Mercavitch acknowledged in his sworn testimony that all of the items listed in his AC were covered by the MOU

20

(SUMF at ¶ 34; Exhibit "A" at pgs. 68, 69).

The release language in the MOU is sufficiently precise and definite to render the settlement agreement enforceable.  The record establishes that the parties manifested mutual assent, and that the MOU evidences the essential terms of the parties' agreement.  In light of these considerations, the Court should enforce the settlement agreement.

V.   **CONCLUSION**

Based upon the foregoing, Defendants respectfully submit that their Motion for Summary Judgment should be granted and that the Plaintiff's Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

By:   _____

Sean P. McDonough, Esquire
Attorney for Defendants
PA ID# 47428
75 Glenmaura National Blvd.
Moosic, PA 18507
Phone (570) 347-1011  Fax (570) 347-7028
smcdonough@dlplaw.com

21

## CERTIFICATE OF COMPLIANCE WITH
## L.R. 7.8(b)(2)

I, Sean P. McDonough, Esquire, Attorney for Defendants, hereby certify

that the foregoing brief complies with Fed.R.Civ.P. 11 in that the brief does not

exceed 5,000 words in length.  The body of the brief, including footnotes, is 4,668

words in length.


Date: December 15, 2016                    S/Sean P. McDonough
                                           Sean P. McDonough, Esquire
                                           Attorney for Defendants

## CERTIFICATE OF SERVICE

I, SEAN P. McDONOUGH, ESQUIRE, hereby certify that on the 15th day of December, 2016, I served the foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, upon the persons indicated below as follows:

Via electronic filing

Cynthia L. Pollick, Esquire
The Employment Law Firm
363 Laurel Street
Pittston, PA 18640
pollick@lawyer.com

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

_____
SEAN P. McDONOUGH, ESQUIRE
Attorney for Defendants
PA ID# 47428
75 Glenmaura National Blvd.
Moosic, PA 18507
Phone (570) 347-1011
Fax (570) 347-7028
smcdonough@dlplaw.com

23